918

## NUNN, BUSH & WELDON SHOE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7014.   Promulgated March 18, 1929.

*H. A. Mihills, C. P. A.* for the petitioner.
*John D. Foley, Esq.*, for the respondent.

922

OPINION.

LITTLETON : In the deficiency notice which forms the basis of this appeal no deduction was allowed on account of the amortization of war facilities, and in the petition as filed error was assigned because of the failure of the Commissioner to make this allowance. However, at that time, full consideration had not been given by the Commissioner to the report of one of his engineers on the claim in question, and on further consideration the Commissioner now admits that some amortization is allowable as a deduction. The pertinent facts, in so far as the parties considered them essential, have been stipulated and it only remains to make a determination on the basis of these agreed facts. An examination of the record presented shows that the property on which amortization is claimed is divided into two classes, namely, that which was useful only during the period of its operation as a war facility and that which was retained by the petitioner for

use or employment in its going business. With respect to the first class, the parties have stipulated the amortization allowable, and even as to the second class the parties are in agreement that amortization is allowable on account thereof, but differ as to the amount. It appears further that they are in agreement as to the costs to be amortized, the capacity of the petitioner's plant at the close of the amortization period and the production for all years from 1917 to 1927, inclusive. They are also in agreement on the fundamental proposition that in a determination of a " value in use," which is our precise issue here, capacity at the close of the amortization period must be compared with production subsequent to this time. Their disagreement relates to the proper production which is to be compared with the agreed capacity, the Commissioner contending that peak production during the post-war period is proper and the petitioner asking that we use average production from 1920 to 1923, inclusive, or, in the alternative, that we use the average production from 1921 to 1923, inclusive.

A similar situation arose in *Manville Jenckes Co.*, 4 B. T. A. 765, where the Board was likewise requested to find a value in use and the parties were in agreement that this could be determined by a comparison of war capacity with post-war production. While in the case at bar we have the capacity at the close of the amortization period fixed by agreement and it is only necessary to fix the production comparative, in *Manville Jenckes Co.*, *supra*, it was necessary to determine both the capacity and the production. In arriving at capacity in the *Manville Jenckes* case, it was stated that, " we believe that it is entirely within reason that the maximum results actually obtained in any one of the years referred to (1916 to 1919) for any one of the taxpayer's mills should be fixed as the measure of the capacity of that mill, and we so decide," and from these maximum results as a measure, the Board found the capacity of the facilities which were on hand at the close of the amortization period. It will be noted that this was not maximum production attained in any one of the years considered, but rather the maximum production which might reasonably be expected from the facilities on hand at the close of the amortization period, basing such expectation on maximum results attained by the various units over the period considered. Likewise, in the case at bar, capacity is not stipulated at the maximum production reached prior to the end of the amortization period, but something in excess of this amount, which we interpret to mean the maximum production which might reasonably be expected from all facilities which were on hand at the close of the amortization period.

This brings us to the real issue or disagreement between the parties: Considering that the parties are agreed that value in use

may be determined by comparing capacity at the close of the amortization period with production subsequent to this time, what production is to be used? This was likewise before us in the *Manville Jenckes* case, wherein the Board said:

We have fixed the capacity of each of the taxpayer's mills on the basis of the maximum results obtained in any one of the years 1916 to 1919. We believe that the available post-war production should be fixed at a figure representing the total of the maximum production of each of the mills in any one of the years of the post-war period; for, after all, this is the full measure of the actual use of the facilities in the taxpayer's post-war business, and if maximum capacity is to be used the comparison should be with maximum production.

The argument of the petitioner against the application of this method is that the peak year in its case (1923) shows an abnormally high production because of the unusual demand for its product at that time, and attention is further called to statistics compiled by the Department of Commerce for " The Leather Industries " in which a similar high production is shown for 1923 as compared with prior and subsequent years. The petitioner might well have carried the comparison one step further to include the *Manville Jenckes* case, where a similar condition is shown to exist. In fact, when we compare the facts in the two cases (*Manville Jenckes* and case at bar), it is difficult to see how a different conclusion can be reached in the two instances. The petitioner's argument for average production seems to overlook the fact that it is not average capacity with which it is to be compared, but maximum capacity. If we are to use maximum capacity, it seems only reasonable that we should likewise use what represents the maximum use made of this capacity during the post-war period. We do not understand that this employment in its business was dictated other than by the needs of its business, nor do we understand that the petitioner did not profit from this use of its facilities. On the whole, we are satisfied that no facts or consideration have been presented in this case which would justify the application of a different rule from that applied in the *Manville Jenckes* case. By this we do not decide, as requested by petitioner, that there may not be situations where it is not proper to use one year's production during the post-war period as the basis of comparison with maximum capacity for the purpose of determining a deduction of the character in question. What is a reasonable allowance as an amortization deduction is a question of fact to be determined in the light of the circumstances and conditions peculiar to a given case.

*Judgment will be entered under Rule 50.*